IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT STEWART,

v.

UNITED STATES OF AMERICA

Civil No.: ELH-15-2683
Criminal No. ELH-13-0262

**MEMORANDUM**

Robert Stewart has filed a motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct sentence. ECF 44. In support of the § 2255 submission, Stewart has filed a lengthy memorandum. ECF 44-1 (collectively, the "Petition" or "Motion to Vacate"). The government opposes the Petition. ECF 50. For the reasons discussed below, no evidentiary hearing is needed to resolve the Petition, and I shall deny the Petition.

**I. Factual and Procedural Background**

A federal grand jury indicted Stewart on May 23, 2013, on a charge of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). ECF 1. On November 5, 2013, Mr. Stewart entered a plea of guilty pursuant to a written plea agreement. ECF 20; ECF 21 (Plea Agreement). Sentencing was held on March 13, 2014. *See* ECF 26. Because Mr. Stewart had three prior qualifying convictions for serious drug offenses, Stewart was deemed an Armed Career Criminal, and the Court therefore imposed the mandatory minimum term of fifteen years' imprisonment, pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See* ECF 27 (Judgment).

On March 14, 2014, Mr. Stewart noted an appeal to the United States Court of Appeals for the Fourth Circuit. ECF 29. He claimed that the "district court erred in imposing a statutory

mandatory minimum sentence because such sentences conflict with the mandate of 18 U.S.C. § 3553(a) (2012) to impose a sentence that is 'sufficient but not greater than necessary.'" ECF 42 at 3. In addition, Stewart argued that the district court erroneously "increased his statutory maximum sentence based on facts that were not charged in the indictment or submitted to a jury, in violation of the Fifth and Sixth Amendments." *Id.* The Fourth Circuit rejected Mr. Stewart's claims and affirmed his conviction on October 24, 2014. *See United States v. Stewart*, 585 Fed. App'x 106 (4th Cir. Oct. 24, 2014) (per curiam); *see also* ECF 42 (Opinion and Judgment of the Fourth Circuit); ECF 43 (Mandate).

Stewart's petition for a writ of certiorari to the United States Supreme Court was denied on February 23, 2015. *Stewart v. United States*, ____ U.S. ____, 135 S. Ct. 1476 (2015). His Motion to Vacate followed on September 10, 2015. ECF 44.

## II. Contentions

Stewart advances two primary grounds for relief. First, he asserts a denial of due process on the ground that two prior Maryland drug offenses were improperly considered as an "ACCA predicate." ECF 44 at 4; ECF 44-1 at 5. Specifically, Stewart complains that the Court relied on prior convictions that do "not qualify as a 'serious drug offense,' because movant received a punishment of less than one year of imprisonment." ECF 44 at 4. Second, Stewart alleges ineffective assistance of defense counsel, "for not challenging the ACCA enhancement sufficiently, nor did counsel anticipate adequately the change in law . . . ." *Id.*

In his supporting Memorandum (ECF 44-1), Stewart asserts: "Congress . . . sought to apply the fifteen year mandatory minimum penalty only to 'serious' career recidivists, like drug kingpins and cartel members, not to persons like the petitioner who was convicted of his first drug charge at 18 years of age and received what amounts to a sentence that can't be

2

serious . . . ." ECF 44-1 at 4. He insists that "his previous drug convictions do not qualify as serious or violent by any definition of the ACCA's predicate." *Id.* at 5.

Stewart relies, *inter alia*, on the Fourth Circuit's decisions in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc), and *United States v. Newbold*, 791 F.3d 455 (4th Cir. 2015), as well as the Supreme Court's ruling in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), to support his claim that he is not an armed career criminal, because his prior drug offenses do not constitute qualifying drug offenses within the meaning of ACCA. He maintains that the government is barred "from using prior drug offenses as predicates for enhancement where the defendant received a sentence of less than one year imprisonment based on the sentencing scheme for that offense." ECF 44-1 at 7. In other words, Stewart contends that, regardless of the maximum potential statutory sentence for his Maryland drug offenses, the federal sentencing court must consider only the sentence that was actually imposed, and not the maximum potential sentence that could have been imposed under the statutory scheme. *Id.*

Further, according to petitioner, 18 U.S.C. § 924(e) "is a prime example of a sentencing statute that seems to render Section 3553(a) superfluous." ECF 44-1 at 11. He reasons that it conflicts with *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, because it "requires courts to impose no less than a 15 year sentence," *id.*, "without any consideration of whether that sentence is 'sufficient but not greater than necessary' under Section 3553(a)." *Id.* Thus, the court cannot effectuate its obligation to make an "individually tailored" sentence. *Id.*

Petitioner also complains that he received ineffective assistance of trial counsel. ECF 44-1 at 17. According to Stewart, his lawyer "refused to listen to the petitioner when he told him that he never carries a firearm for protection." *Id.* And, he complains that defense counsel "refused to investigate the petitioner's claim that his life was in danger . . . ." *Id.* In addition,

3

petitioner claims he "tried to tell the defense counsel about . . . [the] non-seriousness of the prior offenses, but defense counsel refused to hear anything that petitioner had to say and negotiated a plea agreement from a position of weakness . . . ." ECF 44-1 at 17-18.  Petitioner adds: "Instead [of] taking a plea, in 20/20 hindsight the petitioner would have rather taken his chances at trial. The defense counsel's only strategy was the plea bargain route." *Id.* at 19.  And, Stewart complains that his lawyer was "ineffective during the plea negotiations stage . . . ." (*id.*) because he did not "anticipat[e] a new change in law." *Id.* at 20.

The government counters that defendant is "procedurally foreclosed" from rearguing issues that were decided on appeal, absent an "intervening change in the law." ECF 50 at 3 (citing *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013); *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)).  And, to the extent Stewart claims that, under ACCA, he does not qualify as an armed career criminal, the government contends that he has "forfeited" that argument under *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), "because he failed to raise any such argument on direct appeal and cannot 'show cause and actual prejudice resulting from the errors.'" ECF 50 at 2 (citation omitted).  In any event, the government claims that the Petition fails on the merits.

### III. Discussion

#### A.

Section 2255(a) of Title 28 of the United States Code, under which Stewart filed his Petition, provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.

The scope of review of non-constitutional error is more limited than that of constitutional error. A non-constitutional error provides a basis for collateral attack only when it involves ""a fundamental defect which inherently results in a complete miscarriage of justice"" or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999); *see United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Of import here, "a mistaken career offender designation is not cognizable on collateral review." *Newbold*, 791 F.3d at 459 (citing *United States v. Foote*, 784 F.3d 931, 932-33 (4th Cir. 2015)). In contrast, a defendant may challenge on collateral review an alleged erroneous determination that he qualifies as an armed career criminal and has thus "'received a punishment that the law cannot impose upon him.'" *Newbold*, 791 F.3d at 460 (citation omitted).

Under 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). Nevertheless, in my view, no hearing is necessary to resolve Stewart's claims.

**B.**

The defendant pled guilty to and was convicted of the offense of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Section 924(e)(1) of 18 U.S.C. states, in part: "In the case of a person who violates § 922(g) of this title and has three previous convictions by any court referred to in § 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years. . . ." As noted, Stewart contends that two of his predicate offenses do not constitute a "serious drug offense" within the meaning of ACCA.

Section 924(e)(2)(A) defines the term "Serious Drug Offense." As defendant's prior offenses are all under Maryland law, § 924(e)(2)(A)(ii) is relevant. It defines a serious drug offense as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"

Thus, in order to qualify as a serious drug offense, defendant's prior Maryland convictions must have prescribed a *potential* maximum term of imprisonment of at least ten years. Nevertheless, contrary to Stewart's assertion, this does not mean that a State court was required to *impose* a sentence of at least ten years for a particular offense, in order for that offense to qualify as a predicate under ACCA. In other words, the fact that Stewart may not have received a sentence of ten years is irrelevant, because the definition of "serious drug offense" does not turn on the length of the sentence that was actually imposed. Rather, it turns on the maximum sentence that, by law, could have been imposed. *Cf. United States v. Powell*, 691 F.3d 554, 556 (4th Cir. 2012).

Stewart's Presentence Report (ECF 24) clearly reflects that he had at least three prior serious drug offenses, which satisfied the Armed Career Criminal Act. Looking only at the defendant's adult record as to prior felony drug offenses, ECF 24 shows that Stewart was convicted of four qualifying Maryland offenses. He was convicted on April 14, 2004, of possession with intent to distribute cocaine. *Id.* ¶ 39. On December 22, 2004, he was convicted of conspiracy to distribute cocaine. *Id.* ¶ 47. On September 1, 2005, he was convicted of possession with intent to distribute cocaine. *Id.* ¶ 52. And, on December 9, 2005, he was convicted of possession with intent to distribute cocaine and conspiracy to distribute cocaine. *Id.* ¶ 55. Moreover, at sentencing the government did not merely rely on ECF 24. It presented several exhibits documenting Stewart's prior felony drug record, as outlined above. *See* ECF 37.

As the government points out, "[i]t is indisputable that Petitioner was *actually* subject to the *potential* sentence of the statutory maximum of 20 years for his controlled substance offenses." ECF 50 at 4. The government cites to Maryland Code, Criminal Law ("C.L.") Article § 5-602 and § 5-608. C.L. § 5-602 of the 2012 Replacement Volume of the Maryland Code

prohibits the felony offenses of distribution of a controlled dangerous substance ("CDS"), and possession with intent to distribute CDS. C.L. § 5-608 establishes various penalties, and sets a penalty of imprisonment not exceeding 20 years for the first offense under § 5-602 if it involves a Schedule I or Schedule II narcotic drug.[1] I note that C.L. § 5-101(f) defines "controlled dangerous substance." Moreover, the drugs that appear on Schedule I and Schedule II appear at C.L. § 5-402 and C.L. § 5-403, respectively. Cocaine is designated as a Schedule II substance. *See* C.L. § 5-403(b)(3)(iv); *see also Hurt v. State*, 2015 WL 5926870, at *4 (Md. Court of Special Appeals Sept. 4, 2015). Thus, under these statutes, Stewart was subject to potential sentences of up to twenty years for each of the four convictions outlined above.[2]

The cases cited by Stewart do not assist him. In *Newbold*, for example, the Court said, 791 F.3d at 462: "The controlling inquiry . . . is not what sentence [the defendant] actually received for [the drug offense] . . . . Instead, we must determine the maximum penalty that [the defendant] potentially faced given his particular offense . . . ." In *Newbold* the prior offense at issue was not punishable by ten years. *Id.* at 463. This is in marked contrast to the facts of this case.

Nor does *Simmons* advance Stewart's claim. As the government explains, *Simmons* provided that, when a recidivist enhancement statute such as the ACCA defines predicate offenses by their possible term of imprisonment, and certain offenses only meet that punitive threshold by virtue of "aggravating factors," then "those aggravating factors must have been

---

[1] In general, the penalties set forth in C.L. § 5-608 also apply to conspiracy. *See, e.g.*, C.L. § 5-608(b).

[2] The government has not reviewed the penalties as of 2004, when Stewart was first convicted of a serious drug offense as an adult. However, the penalty was the same at that time. *See, e.g.*, Md. Code (2002), C.L. § 5-602, derived from Md. Code Ann., Art. 27 § 286(a); Md. Code (2002), C.L. § 5-608.

*actually* rather than potentially applicable to the defendant for the statute to apply." ECF 50, (citing *Simons*, 649 F.3d at 243-46) (emphasis added by government).

I also agree with the government that Stewart's convictions for drug trafficking crimes "place him in precisely the criminal classification that Congress intended to subject to increased punishment." ECF 50 at 6. Therefore, his argument to the contrary is unavailing.

Nor is there merit to petitioner's contention that the mandatory minimum under the ACCA conflicts with and defeats the Court's discretionary sentencing authority under 18 U.S.C. § 3553(a). On appeal to the Fourth Circuit, Stewart unsuccessfully made this same argument, claiming that the mandatory minimum sentence under § 924(e) conflicted with the terms of § 3553(a), obligating a court to impose a sentence "sufficient but not greater than necessary." ECF 42 at 3.

To be sure, a court must "impose a sentence sufficient, but not greater than necessary, to comply" with the objectives of sentencing, as outlined in 18 U.S.C. § 3553(a)(2). But, as to Stewart's appeal, the Fourth Circuit noted that, under 18 U.S.C. § 3551(a), "courts must sentence a defendant in accordance with § 3553(a) '[e]xcept as otherwise specifically provided.'" *Id.* at 3. The Court also explained, *id.*: "'Thus, the general sentencing provisions in § 3553(a) give way to specific mandatory sentencing provisions elsewhere in the criminal code.'" (Citations omitted).

In sum, Stewart was properly found to be an Armed Career Criminal. As a result, this Court had no discretion to disregard the congressionally mandated minimum sentence. *See* ECF 42 at 4 (citing *United States v. Robinson*, 404 F.3d 850, 862 (4th Cir. 2005)).

**C.**

Stewart contends that his lawyer provided ineffective assistance of counsel. To challenge successfully a conviction or sentence under § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g., United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) ("To succeed on a Sixth Amendment claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland*."); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Gordon v. Braxton*, 780 F.3d 196, 200 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *Yarbrough v. Johnson*, 510 F.3d 327, 337 (4th Cir. 2008). *See generally Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399 (2012); *Laffer v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. This is known as the "performance prong" of the test, which relates to professional competence. In this regard, the petitioner must establish, by a preponderance of the evidence, that "'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrison v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance.'" *Branker,* 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care." *Harrington*, 562 U.S. at 105.

As to performance, the central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* at 88 (quoting Strickland, 466 U.S. at 690). The Supreme Court said in *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986): "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*

As the Supreme Court said in *Padilla*, 559 U.S. at 371, "Surmounting *Strickland's* high bar is never an easy task." A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court need not address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because the petitioner must prove both prongs in order to prevail; failure to satisfy either prong is fatal to a petitioner's claim. *Fields v. Attorney Gen. of*

11

*Maryland,* 956 F.2d 1290, 1297-99 (4th Cir. 1985). As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Moreover, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

Of import here, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson,* 397 U.S. 749, 771 (1970). But, the prejudice prong of the *Strickland* test is slightly modified. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit described a defendant's burden in the context of a post-guilty plea claim of ineffective assistance of counsel and said, *id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Accord Burket v. Angelone,* 208 F.3d 172, 189 (4th Cir. 2000); *Fields*, 956 F.2d at 1294–99.

In *Hill*, 474 U.S. 52, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). And, as noted, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper*, 845 F.2d 471, also provides guidance. In that case, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472.

12

However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. It was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding. *Id.*

*United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), is also relevant. There, the Court said that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Thus, in evaluating a post-guilty plea claim of ineffective assistance, the defendant's sworn statements, affirming satisfaction with counsel, are binding on the defendant, absent "clear and convincing evidence to the contrary." *Fields*, 956 F.2d at 1299. Moreover, the fact that a plea bargain is "favorable" to a defendant and that accepting it was "a reasonable and prudent decision" is itself evidence of "[t]he voluntary and intelligent" nature of the plea. *Id.*

Stewart pled guilty on November 5, 2013. *See* ECF 20. A copy of the transcript of the rearraignment is found at ECF 34. At the outset of the guilty plea proceedings, the defendant was sworn. ECF 34 at 2. He indicated, in response to the Court's inquiry, that he understood his obligation to answer the Court's questions truthfully. ECF 34 at 3. The government presented a summary of facts beginning at page 32 of ECF 34. Thereafter, the defendant indicated that the government's summary of the facts was accurate. ECF 34 at 34. Moreover, Stewart admitted that he committed the crime, as summarized by the government, and that he still wished to plead guilty. *Id.* No facts were presented to support a justification defense, discussed, *infra*. Nor are there any facts in Stewart's submissions to support a finding that, but for defense counsel's alleged errors, he would not have pleaded guilty and, instead, would have proceeded to trial.

In his Petition, Stewart seems to argue that his lawyer was ineffective because he "refused to investigate the Petitioner's claim that his life was in danger and refused to listen to the Petitioner when he told him that he never carries a firearm for protection." ECF 44 -1 at 17. As the government suggests, this seems to constitute a claim that defense counsel failed to present a justification defense. Yet, petitioner's assertions as to the defense are entirely conclusory. Moreover, it does not appear that Stewart could have satisfied the elements of a justification defense.

In *United States v. Ricks*, 573 F.3d 198, 202 (4th Cir. 2009), Judge Gregory, writing for the Court, found that the district court committed reversible error by denying a request for a jury instruction on justification. *Id.* at 203. The Court acknowledge that "justification is a common-law defense . . . ." (*id.* at 201) and set forth the elements of the defense of justification so as to warrant the jury instruction. *Id.* at 202. According to the Court, the defendant must produce evidence that he "(1) was under unlawful and present threat of death or serious bodily injury; (2)

he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) had no reasonable legal alternative . . . .; and (4) [show] a direct causal relationship between the criminal action and the avoidance of the threatened harm." *Id.* (citation omitted).

As the government observes, the Petition does not allege any facts satisfying these elements. ECF 50 at 10. Nor does the Statement of Facts suggest that such a defense would have been warranted. Therefore, counsel was not deficient for failing to present an unfounded legal defense. *See Baker v. Corcoran*, 220 F.3d 276, 293 n.15 (4th Cir. 2000) (stating that counsel was not ineffective for failing to challenge a jury instruction that was without merit). Moreover, such a defense would not have been successful at trial, because "such a defense would [not] have been viable." ECF 50 at 11. Thus, Stewart has failed to establish the prejudice element under *Strickland*. *Id.*

Nor is there any merit to Stewart's argument that defense counsel was ineffective for failing to argue that Stewart's prior drug offenses were not serious, so as to the avoid the designation of an Armed Career Criminal. For the reasons previously stated, this argument wholly lacks merit.

## IV. Conclusion

For the reasons set forth herein, the Court shall DENY Stewart's Motion to Vacate Under § 2255. An Order follows.


Date: March 24, 2016                                         /s/
                                                   Ellen L. Hollander
                                                   United States District Judge